## KATZ *v.* ARUNDEL-BROOKS CONCRETE CORPORATION

[No. 254, September Term, 1958.]

*Decided June 8, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Morton H. Perry,* with whom was *Sheldon A. Rubenstein* on the brief, for appellant.

*Robert E. Coughlan, Jr.,* for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment entered upon a directed verdict for the defendant, at the close of the plaintiff's case, in an action for personal injuries sustained in the use of ready-mixed concrete. The facts are uncontradicted. The appellant, 35 years old, is the owner of a dwelling at 25 South Lloyd Street, in Baltimore City, although he resides at another address. He had worked as a mechanic for a pinball company, but was unemployed at the time of the injury. He was directed by the

City Health Department to rat-proof and cement the dirt cellar, which was 20 feet by 30 feet in size, and about 3 or 4 feet in height to the rafters or floor timbers supporting the first floor. He discussed the matter with his cousin, the foreman of a contracting firm, who calculated the amount of concrete needed at 4 cubic yards. He ordered this amount of ready-mixed concrete from the appellee by telephone and it was delivered in one load the same day, and, at his direction, poured into the cellar through the front window by means of a chute. He told the driver where to place the chute, and signed the delivery ticket, but had no further conversation with the driver.

The appellant, with a helper, undertook to spread the concrete with rakes and other tools, so as to cover the cellar floor to a uniform depth of about 4 inches. He had never worked with concrete before, and made no inquiries of anyone as to proper precautions. He was engaged in this work for about five hours, most of the time on his hands and knees. He wore no gloves, pads, or protective covering except ordinary work trousers. Because he knelt in the wet concrete, the knees of his trousers became thoroughly saturated with the liquid mixture. When the work was completed, he found that his knees had sustained third-degree burns. There was no injury to his bare hands. Apparently the helper was uninjured.

The appellant produced a witness, Dr. Bogue, a chemical engineer and an expert on the subject of cement, who had worked for thirty years in the United States Bureau of Standards. He testified as to the chemical properties of cement. He explained that cement is made of kiln-burned limestone and clay. When mixed with sand, gravel and water, it hardens into concrete. He testified that all cement contains some alkaline ingredients, such as sodium and potassium hydroxides in amounts up to perhaps one percent, and small amounts of calcium oxide, "which on prolonged contact with the human skin can product chemical burn, particularly if the skin is sensitized by cuts, bruises, chafing as by the sand in a concrete mix." He testified that among people who worked with cement, these properties were well known, and it was customary to use some protection, such as boots, pads or burlap wrappings. Some wore rubber gloves, but some did not. The

palms of the hands are not particularly susceptible to injury. He admitted that there had never been any government directive, to his knowledge, requiring sellers of mixed cement to post a warning notice on their product, or warn of its chemical properties or caustic action when wet.

The theory of the plaintiff's case is not entirely clear. The declaration alleged that the concrete was unfit for the purpose intended, that the defendant gave no warning of the dangerous, or potentially dangerous, properties of the concrete, which were known, or should have been known, to the defendant, and that the defendant was negligent. We take it that this is not a claim for breach of warranty of fitness. There was no showing that the concrete delivered was defective, that it contained anything unusual, or that it was not safe to use in the usual and customary manner. The buyer got precisely what he ordered, wet concrete mixed according to specifications. The claimed liability would seem to rest solely upon breach of a duty to warn as to the chemical properties of the cement, which made it potentially dangerous in that, when mixed in the wet concrete, it was capable of causing burns to the skin upon prolonged exposure.

For present purposes we may assume, without deciding, that an action for negligence will lie against the supplier of a commodity, for failure to warn of a latent danger attendant upon a proper use of the commodity supplied, at least where injury is foreseeable and probable. We have found no Maryland case directly in point, but compare *Kaplan v. Stein*, 198 Md. 414; *Otis Elevator Co. v. Embert*, 198 Md. 585, 598; and *Babylon v. Scruton*, 215 Md. 299, 305. See also *Clark v. Army and Navy Co-operative Society*, [1903] 1 K.B. 155; *McClanahan v. California Spray-Chemical Corp.*, 75 S. E. 2d 712 (Va.) ; *Cleary v. John M. Maris Co.*, 19 N. Y. S. 2d 38; *Hopkins v. E. I. DuPont De Nemours & Co.*, 212 F. 2d 623 (C. A., 3d Cir.) ; 2 Restatement, *Torts*, § 388, and comments *g* and *i;* note 86 A.L.R. 947; Dillard & Hart, *Product Liability: Directions For Use And The Duty To Warn*, 41 Va. L. Rev. 145; Prosser, *Torts* (2d Ed.), pp. 491, 503; 2 Harper & James, *Torts*, § 28.3. We may also assume that knowledge of dangerous properties may be imputed to the manufacturer or sup-

plier. Cf. *Sylvania Electric Products v. Barker,* 228 F. 2d 842 (C. A., 1st Cir.).

The authorities cited indicate that the test is one of reasonableness under the circumstances; that a supplier is under a duty to make his product reasonably safe for its intended use with ordinary care; but a duty to warn of inherent dangers only arises where there is a reasonable probability of injury unless warning is given. Most of the cases in which liability has been found are cases where there was a serious defect in the commodity supplied, or where the commodity was so new that its dangerous properties could not reasonably be known or ascertained by the user. Concrete is certainly not a new product, since it has been in common use in every kind of construction project for at least fifty years. Moreover, it is perfectly safe to use, if normal precautions are taken against prolonged application to sensitive portions of the skin. The caustic properties of lime, and lime products, have been known for centuries. In considering the extent of the duty to warn, it may be noted that ready-mixed concrete is customarily sold to builders who are thoroughly familiar with its properties, not to a casual user without prior experience. Thus, warnings in most cases would only dilate upon the obvious. We think it would be as unreasonable to require every supplier of concrete to warn of its caustic properties, as to require an electric company to warn of the danger of touching uninsulated wires. If the danger is not patent, it is at least in the realm of common knowledge which the supplier may properly take for granted. Cf. *Le Vonas v. Acme Paper Board Co.,* 184 Md. 16, 21.

We have found only three cases directly in point on the facts, and in all of these cases recovery was denied. In *Dalton v. Pioneer Sand & Gravel Co.,* 227 P. 2d 173 (Wash.), the Court said: "The duty [to warn] * * * does not arise unless there is a showing of inherent danger in the material, known only to experts, which the seller knows or ought to know would likely produce injury to a handler of ordinary knowledge and prudence." It was held that the fact that water activates the lime in cement, giving it a caustic effect, was not beyond the ken of laymen, and there was no duty to warn a casual user under the circumstances. The same result was reached in *Simmons v.*

*Rhodes & Jamieson, Ltd.,* 293 P. 2d 26, 29 (Cal.), although the case went off on the point that *res ipsa loquitur* did not apply. See also *Imperial v. Central Concrete,* 162 N. Y. S. 2d 35, affirming, without opinion, a holding of the Appellate Division denying recovery under similar circumstances.

Under the circumstances of the instant case, we think there was no duty to warn, and hence the trial court did not err in granting the prayer for a directed verdict for the defendant.

*Judgment affirmed, with costs.*