457 S.W.2d 28 (1970)
FORD MOTOR COMPANY, Plaintiff in Error,
v.
DONALD C. EADS, Defendant in Error.
Supreme Court of Tennessee.
June 15, 1970.
Rehearing Denied August 3, 1970.
McCampbell, Young, Bartlett & Woolf, Knoxville, for plaintiff in error.
W. Conway Garlington, and Joseph J. Nigro, Knoxville, for defendant in error.

OPINION
CRESON, Justice.
This cause comes to this Court from the Court of Appeals by writ of certiorari heretofore granted. That Court affirmed a judgment entered by the Circuit Court of Knox County in favor of defendant in error, Donald C. Eads.
In the course of this opinion the parties will be referred to as they appeared in the trial court; that is, defendant in error, Donald C. Eads, as plaintiff and plaintiff in error, Ford Motor Company, as defendant.
On July 27, 1967, plaintiff sued defendant and Knoxville Tractor Company, Inc., seeking to recover for personal injuries sustained when a Ford tractor, upon being started, moved forward and ran over him.
The six-count declaration charges, in addition to breach of express and implied *29 warranties, that defendant represented that its tractor would only start in neutral but negligently delivered to plaintiff a defective and unreasonably dangerous tractor, and that the defective tractor was the proximate cause of plaintiff's injuries.
On September 29, 1967, defendant filed its pleas, denying breach of any warranties and denying that the tractor was defective or in a dangerous condition.
After Knoxville Tractor Company, Inc. filed its pleas to the declaration, plaintiff took a voluntary nonsuit as to it.
The cause came on to be heard on September 24, 1968. The trial judge submitted the case to the jury only on the theory of strict liability, in accordance with 2 Restatement (Second) Torts, § 402A.
The jury returned a verdict for $75,000.00. Judgment was entered, from which defendant prayed and perfected an appeal in error to the Court of Appeals. That Court affirmed the judgment, and this Court granted defendant's petition for certiorari.
On May 17, 1966, plaintiff purchased a Ford tractor from Knoxville Tractor Company. While still on the dealer's lot the tractor was difficult to start, but plaintiff was told the problem would be remedied by a new part.
Plaintiff testified that he had difficulty in starting it from the beginning; that sometimes it would start in neutral, as intended, but, on the other occasions, the gearshift would have to be "jiggled" into a forward gear or into reverse, before it would start.
On June 9, 1966, plaintiff called Knoxville Tractor Company and complained that the tractor was difficult to start. Plaintiff was told a new part to remedy the problem was on order. Approximately one month later, plaintiff talked with Knoxville Tractor Company again, and was told that the part still had not come in.
On July 20, 1966, plaintiff's brother, Ted Eads, borrowed the tractor. While he was operating it, the motor ceased running and could not be started again. At the suggestion of one of the men in the shop of Knoxville Tractor Company, Ted Eads "hot-wired" the starting mechanism. This had the effect of circumventing a safety mechanism which caused the tractor to start while in gear as well as in neutral. Ted Eads testified that he did not inform plaintiff that the tractor was "hot-wired".
On August 9, 1966, plaintiff had the tractor at his home. His brother, Ted, came to borrow the tractor again to use on one of his jobs. Plaintiff thought it necessary to change the oil in the tractor before it was used further. Because the front loader was in such a position that the hood of the tractor could not be raised, it was necessary to start the engine to raise the front loader a short distance above the hood of the tractor. Plaintiff went to the left side of the tractor and without mounting, moved the gearshift lever to ascertain that it was in neutral. Thinking it was in neutral, he then turned on the switch. The tractor moved forward, the left wheel running over him, causing serious injury.
After the accident the starter was examined by Clay Keck, formerly a mechanic for Knoxville Tractor Company but now an employee of defendant. Mr. Keck testified that after placing the wires back in their original position the tractor would not start with the gearshift in any position. He then replaced the starter plunger with another plunger and the tractor started without difficulty when in the proper neutral position. Mr. Keck further testified that the plunger he removed was too short, measured in thousandths of an inch. The effect of the short plunger was that contact could not be made to complete the circuit to start the tractor. He did testify that by jiggling the gear lever it was possible to make contact for "half a second" to start the tractor. It was his belief, however, that contact could be made only when the gearshift was in neutral; and that it was impossible to make contact while the *30 tractor was in gear with the wires in the proper position.
Defendant has filed the following assignments of error in this Court:
"1. The Court of Appeals erred in holding that under the evidence a jury could find the tractor was in an unreasonably dangerous condition within the meaning of Section 402A of the Restatement of the Law of Torts, Second Edition.
2. The Court of Appeals erred in holding that the hot-wiring of the tractor created liability of Ford Motor Company under Section 402A of the Restatement.
3. The Court of Appeals erred in holding that the evidence in this case presented a question for the jury as to whether plaintiff was guilty of proximate contributory negligence.
4. The Court of Appeals erred in holding that under the evidence there could be no assumption of risk."
This Court has heretofore recognized that strict liability exists upon the manufacturer of a product without proof of negligence on his part, under the circumstances outlined in 2 Restatement (Second) Torts, § 402A. Ford Motor Company v. Lonon (1966) 217 Tenn. 400, 398 S.W.2d 240; Olney v. Beaman Bottling Co. (1966) 220 Tenn. 459, 418 S.W.2d 430.
This section of the Restatement reads as follows:
"§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer
(1) One who sells any product in a defective condition unreasonably dangerous to the user or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."
Defendant, in its brief, admits that the marginally short plunger rendered the starter system defective. It is denied, however, that this defect resulted in the tractor being unreasonably dangerous to the user. Instead, it is argued that such a defect would prevent rather than make more likely the tractor's starting with the gear lever in any position but neutral. In support of this argument, defendant relies heavily upon the testimony of the plaintiff's own witness, Clay Keck. On direct examination, Mr. Keck testified as follows:
"Q. Assume, though, that there is testimony that by jiggling the gears that on occasion it did start. Isn't it possible that by jiggling the gears you're able to kick that thing up there and occasionally make contact?
A. For a half a second.
Q. Right. In order to kick it over?
A. Right."
Immediately after this line of questioning, Keck made the following answers to questions on cross-examination:
"Q. Mr. Keck, that would only be in neutral, though, right?
A. Yes, sir.
Q. You couldn't do it in gear, could you?
A. No.

*31 Q. And if you jiggled it in gear it wouldn't work, would it?
A. There wouldn't be nothing there to hit it.
Q. That's right, because even if you jiggled the roller, as is seen in the model, it wouldn't be hitting the pin, would it?
A. No, sir.
Q. So when plaintiff's counsel asked you about the jiggling you are restricting it to being only in neutral?
A. Neutral only."
The plaintiff testified that before the accident he had been able to start the tractor while it was in gear and in neutral. Defendant argues that this testimony can be reconciled with Keck's testimony only by inferring that plaintiff's recollection about starting the tractor in gear must be related to the three-week period between the "hot-wiring" and the accident.
It is argued in plaintiff's brief that the jury was free to accept plaintiff's testimony and to conclude that either because of the short plunger or on account of some other shortcoming, the safety mechanism designed to prevent the tractor from starting in gear was not functioning properly.
It is sufficient to say that the proof with respect to plaintiff having started the tractor in gear prior to the "hot-wiring" is in doubtful state. This is of no great consequence. It is undisputed that when plaintiff's brother, Ted Eads, was using the tractor, the tractor's engine was killed and could not be started. At this point it is evident that the tractor was an inert piece of machinery which could not be started at all. Ted Eads' testimony was that he "couldn't get it started any way, shape, form, or fashion." The mechanic, Mr. Keck, testified that after the accident he replaced the wires in their proper position, and that the tractor could not be started. Then, Mr. Keck further testified that he replaced the plunger, with the result that the tractor started without difficulty. Ted Eads' testimony reveals that when he could not start the tractor he talked with one of the garage employees at Knoxville Tractor Company for assistance in starting it. This man told him to take the ignition wires loose and wire then together, which he did. This had the effect of by-passing and rendering inoperative the mechanism which prevented the tractor from being started in gear.
At this point we can only conclude all reasonable men must agree that, instead of being a defective tractor and unreasonably dangerous, this defective tractor could not be started, and was dangerous to no one in its inert condition.
Plaintiff's position is that defendant should have reasonably foreseen that a user having difficulty in starting a tractor might, in order to complete his day's work, rewire the tractor in order to cause it to start.
Defendant, on the other hand, urges that the tractor that could not be started had "failed safe"; and that the "hot-wiring" was an efficient intervening cause as a matter of law.
The problem of intervening cause has been very ably discussed by this Court in the case of Ford Motor Co. v. Wagoner (1946) 183 Tenn. 392, 192 S.W.2d 840. There it is stated:
"* * * Where the intervening agency was of such a nature that it could not reasonably have been anticipated, such agency becomes the proximate cause, even though the injury would not have occurred except for the original negligence."
And:
"* * * in 38 Am.Jur. at page 729, 730, it is said that, `it can be stated as a general rule that ordinarily the intervention of a negligent act as the independent and efficient cause of an injury operates to relieve one who has been guilty of prior *32 negligence from responsibility for the injury.' Elsewhere this authority notes the conditions upon this general rule, (1) that the intervening actor shall be a conscious agency and (2) that his conduct could not have been reasonably anticipated."
Counsel for plaintiff places heavy reliance upon the case of Comstock v. General Motors Corporation (1959) 358 Mich. 163, 99 N.W.2d 627, as stating the law of the case at bar. In that case a Buick dealer received instructions from General Motors to make repairs on the power brake system whenever 1953 Buicks came into the shop. These repairs were made without notice to the owners. No warning to owners was given by either General Motors or the dealers. When Leon Friend discovered the brakes on his Buick were not operating properly, he took the car to the dealer. The mechanic forgot to put the usual "no brake" sign on the car. A few minutes later the mechanic went back to move the car, and, forgetting about the car's condition, ran into another employee, and injured him. The Michigan Court held (1) that there was evidence from which the jury could infer negligence on General Motor's part, and (2) that there was evidence from which the jury could have concluded that such negligence was of such a continuous nature as to constitute a proximate cause of the accident, notwithstanding the negligent act of the mechanic. The Court stated:
"Here, General Motors' acts or omissions in relation to supplying and failing to warn about the defective brakes were clearly operative to the point of impact in this accident. And the injury which resulted is the kind of injury which defective brakes produce." (Emphasis added).
This situation, however, differs substantially from the case at bar. In Comstock, the defective vehicle would start, but would not stop. The vehicle in the instant case would not start. The difference is quite apparent. It is this very distinction which prevades much of the Restatement of Torts treatment of this general subject.
It should also be pointed out that foreseeability is an essential ingredient of proximate causation in the law of negligence. Here, it is much argued, pro and con, as to whether the defendant should have, or not, foreseen the "hot-wiring" which occurred. That, however, becomes relatively insignificant in view of the fact that the plaintiff's own brother did the "hot-wiring" and then neglected to inform plaintiff of such condition. This record shows that the "hot-wiring" condition continued for some two to three weeks prior to Donald Eads' accident and injury. The record also shows that the plaintiff's brother was on the scene at the time of the casualty itself.
For the reasons heretofore expressed, we hold that the "hot-wiring" was a conscious agency, which unforeseeably intervened, and destroyed any causal connection between defendant and the ultimate injury sustained by the plaintiff.
It results that the judgment of the Court of Appeals must be reversed and the cause dismissed. The costs of this appeal are assessed against Ford Motor Company and Donald C. Eads, in equal amounts.
DYER, C. J., HUMPHREYS and McCANLESS, JJ., and JENKINS, Special Justice, concur.

OPINION ON PETITION TO REHEAR
CRESON, Justice.
The petition to rehear filed in this cause seems to seek a further opinion which would necessarily be more advisory in nature than decisional. In any event, no new argument is made, no new authority adduced, and no material fact pointed out as overlooked.
The petition is denied.
DYER, C. J., HUMPHREYS and McCANLESS, JJ., and JENKINS, Special Justice, concur.