Boyd H. REECE, et ux., Goldie Reece, Individually, and a/n/f Timothy Paul Reece, and as surviving parents of David Harold Reece, deceased,

v.

## LOWE'S OF BOONE, INC.

Boyd H. REECE, et ux., Goldie Reece, Individually, and a/n/f Timothy Paul Reece, and as surviving parents of David Harold Reece, deceased,

v.

## MANCO PRODUCTS, INC.

Court of Appeals of Tennessee,
Eastern Section.

Feb. 17, 1988.

Application for Permission to Appeal
Denied by Supreme Court
May 2, 1988.

Howard R. Dunbar, Johnson City, for appellants.

C.T. Herndon, III, Johnson City, for Lowe's.

Michael J. Hickie, Johnson City, for Manco.

## OPINION

GODDARD, Judge.

This is a consolidated appeal from two separate suits brought in the Circuit Court for Johnson County. In the first Boyd H. Reece and wife Goldie sue Lowe's of Boone, Inc., individually, and as next friend for injuries to their son, Timothy, and the wrongful death of another son, David. In the second suit they sue Manco Products, Inc., in the same capacity for the same wrongs.

The suits against both Defendants were under the theories of negligence, strict liability in tort, and breach of implied warranty. The Trial Court sustained summary judgments as to both Defendants, resulting in this appeal.

Although the Plaintiffs present numerous issues, they may be reduced to a single question. Did the Trial Court act properly in granting summary judgments?

The pleadings, affidavits, depositions, and answers to interrogatories disclose that on July 7, 1983, at approximately 5:15 p.m., David was operating a go-kart on a public road in Johnson County. His younger brother, Timothy, then age six, was sitting on his lap as a passenger. When the go-kart approached the intersection of that road with another road it was brought to a stop and then proceeded into the intersection where it was struck by an automobile coming from the left. At the point of the intersection there is a bank and weeds some six feet in height which would obscure the vision of David, as well as the driver of the other vehicle.

The go-kart was manufactured by Manco and had been purchased by James G. Osborne from Lowe's of Boone, Inc., in December 1977. Thereafter it sold to Robert Eugene Taylor. David, who had earned money in his own right, had purchased the go-kart from Mr. Taylor on Monday, July 4, four days before the accident.

The go-kart had two separate warning labels, which read as follows:

–WARNING–

THIS VEHICLE IS NOT DESIGNED OR INTENDED FOR USE ON PUBLIC THOROUGHFARES, ROADS, STREETS OR LIMITED ACCESS HIGHWAYS. THIS VEHICLE IS FOR TRACT OR OFF ROAD USE ONLY. CHECK LOCAL AND STATE LAWS BEFORE OPERATION.

NOTICE

This Vehicle Was Not Manufactured For Use On Public Streets, Roads or Highways And is Not Intended For Such Operation.

David and his three younger brothers, including Timothy, understood that the go-kart was not to be used on the road and had been warned repeatedly or, as testified to by their father, "times after times" that he should never operate it on any road.

The vehicle had no mechanical defects, although it did not have a vertical pole with a flag ofttimes employed by bicycles as a safety measure, which the Plaintiffs insist renders both Defendants liable on all theories of recovery.

Professor John W. Wade, in a Vanderbilt Law Review article (Volume 33, page 551) points out as to all theories the following:

In general today, a plaintiff who has suffered injury to his person or his property from a product manufactured or supplied by the defendant may sue in negligence, or for breach of an implied warranty, or in strict tort liability. Many states recognize all three theories and will permit a plaintiff to sue on all three at once; others may not recognize all of the three or may impose limitations on the ability to sue on all of them in the same action. Whichever theory is used, the plaintiff must show that the product itself is actionable—that something is wrong with it that makes it dangerous. This idea of "something wrong" is usually expressed by the adjective "defective" and the plaintiff must show that the product was defective.

. . . .

To reiterate: whether the suit is based on negligence, or breach of implied warranty, or on strict liability, the product must be found to be unsafe—dangerous by some measure—in order to be actionable. At this point, I offer the suggestion that the measure of lack of safety will turn out to be essentially the same for each of the three theories, and that it is not in regard to this element that a distinction is to be drawn between negligence and strict liability.

. . . .

The essential difference between an action in negligence and one in strict liability (or breach of warranty) lies not in the condition of the product but in the requirement in the negligence action of additional proof regarding the nature of the defendant's conduct. In the negligence action, not only must the product itself be found actionable, but the defendant must also be found negligent in letting the product get into that dangerous condition, or in failing to discover the condition and take reasonable action to eliminate it. In strict liability this is not required; all that the plaintiff must do is show that the product was in the danger-

ous condition when it left the defendant's control.

Disposition of this appeal is controlled by the Tennessee Products Liability Act of 1978, Title 29, Chapter 28, Tennessee Code Annotated which, as pertinent, provides the following:

*29–28–105. Determination of defective or dangerous condition.*—(a) A manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

(b) In making this determination the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market, rather than at the time of injury, is applicable. Consideration is given also to the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products.

(c) The provisions of this section do not apply to an action based on express warranty or misrepresentation regarding the chattel.

(d) A product is not unreasonably dangerous because of failure to adequately warn of a danger or hazard that is apparent to the ordinary user.

*29–28–102. Definitions.*—As used in this chapter unless the context otherwise requires:

. . . .

(2) "Defective condition" means a condition of a product that renders it unsafe for normal or anticipatable handling and consumption.

. . . .

(8) "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would

not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerous condition.

Unlike Section 403(a) of the Restatement of Torts, Tennessee law casts liability if the product "is determined to be in a defective condition *or* unreasonably dangerous at the time it left the control of the manufacturer or seller." (Emphasis supplied.)

Thus, our inquiry should be directed to whether the go-kart was defective or unreasonably dangerous as contemplated by the Tennessee Products Liability Act.

In addressing this question the Plaintiffs point to the affidavit of Leighton E. Sisson, a licensed engineer and Dean of Engineering at Tennessee Technological University, as follows:

2. I have been retained by counsel for Plaintiffs in this case to assist in preparation of the case for trial. I have reviewed the Complaint and other lawsuit papers, two accident reports, photographs of the damaged gocart and photographs of the intersection and surrounding area where the collision occurred.

3. In my opinion, the gocart should have been equipped with a safety flag or other similar device to warn others of the presence of the gocart. The manufacturer should have designed the gocart and equipped it with a safety flag. If this was not done by the manufacturer, the retailer should have recognized that the gocart presented a hazard and should have equipped the gocart with a safety flag.

4. One reason I come to this conclusion is because the gocart was inherently difficult to see. It is obviously quite low to the ground. For example, the top of the head of the driver around five feet six inches tall would be no more than about three feet or so from the ground, the frame of the gocart was not painted a blaze orange or other high visibility color.

5. Another consideration relating to visibility is the presence of vegetation. It is common knowledge that weeds and other vegetation along the edge and surrounding area of the road often obscures visibility such that traffic on an intersecting road is more difficult or impossible to see. Low level visibility into the intersection is particularly reduced. The presence of vegetation which obscures visibility is more likely in a rural area. It is common knowledge that gocarts are sometimes driven on public roads, particularly in rural areas.

6. Safety flags of a type which could have been installed on the gocart are readily available, are inexpensive, and are easily installed. These safety flags consist of a triangular blaze orange flag mounted on a plastic pole around six feet in length. The plastic pole engages into a mounting bracket which can be secured with a single ordinary bolt. The safety flag, pole and mounting bracket are sold as a unit and cost only a few dollars. Such a safety flag is shown in the attachment to my affidavit.

The Plaintiffs also rely on the case of *Gann v. International Harvester Company of Canada, Ltd.,* 712 S.W.2d 100 (Tenn. 1986). In that case a young man was severely injured when a crawler tractor, which was not equipped with roll bars, turned over on relatively level ground. In finding that a jury question had been made, the Court used the following language:

[T]he tests for determining what products are defective and unreasonably dangerous in Tennessee are those prescribed in comments (g) and (i) to 402A of the Restatement Second. In this case the test may be stated as whether the danger posed by the absence of a ROPS and a seat belt was beyond that expected by an ordinary consumer with the ordinary knowledge common to the community as to the characteristics of a 500C Crawler tractor.

We find that there was proof on behalf of plaintiff that the ordinary consumer throughout the United States lacks knowledge that roll-overs occur on relatively flat ground, and lacks knowledge of the number of roll-overs that occur in farm operations. This accident occurred on a vehicle path that has been used many times by Gary Gann and Garland

Gann, that was almost level, and the terrain of the vehicle path appeared normal on the date of the accident. Gary testified that the only experience he had encountered where the tractor slid was on slate rock and in mud; that he was not aware that the ground was frozen on the day of the accident. Garland Gann testified that he would have driven the tractor over the vehicle path that day; that it looked safe to him. It may be inferred from the testimony of Gary and Garland that if they had known the ground was frozen they would not have recognized or expected any danger of roll-over from that condition, on ground as nearly level as the vehicle path was.

We believe the present case is distinguishable from *Gann* in that it was not obvious to an ordinary user that the center of gravity of the tractor was such that it was susceptible to turning over on relatively level ground.

The facts in the case at bar we believe more nearly parallel those in *Pemberton v. American Distilled Spirits Co.,* 664 S.W. 2d 690 (Tenn.1984). In that case a young man died as a result of ingesting a quantity of almost pure grain alcohol. The Supreme Court stated in the course of its opinion the following:

The plaintiff makes no claim that the grain alcohol was improperly manufactured, or that it contained dangerous impurities, or that any of the defendants violated any statutes regulating the manufacture or sale of alcoholic beverages, but proceeds on the theory that the grain alcohol was in a "defective condition" and was "unreasonably dangerous" because of its high alcoholic content, and because of the failure of the defendants to warn consumers of dangers inherent in its consumption.

As pointed out by Judge Franks in his dissenting opinion in the Court of Appeals, "[a]lthough deceased was a minor, whether the product was defective or unreasonably dangerous within the meaning of the Act is determinable from the standards established in the Act, *i.e.,* the knowledge of the ordinary consumers

of the product. The comments to § 402(a) *Restatement (Second) of Torts* support this interpretation of 'unreasonably dangerous.' Comment j recognizes that the law does not impose a duty to warn of widely known risks, *i.e.,* '[a] seller is not required to warn with respect to products or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger or potentiality of danger is generally known and recognized. Again the danger of alcoholic beverages are an example ...'

"Where the facts are undisputed whether a duty to warn exists is determined as a matter of law and, when the danger is open and obvious, no duty to warn is imposed. *See e.g., Jamieson v. Woodward & Lothrop,* 247 F.2d 23 (D.C. Cir.1957); *Bojorquez v. House of Toys, Inc.,* 62 Cal.App.3d 930, 133 Cal.Rptr. 483 (1976), and under the *Restatement* version of strict liability, where the danger is evident to most users of a product, there is no duty to warn an occasional, inexperienced user. *Baker v. Stewart Sand and Material Co.,* 353 S.W.2d 108 (Mo.1961); *Katz v. Arundel–Brooks Concrete Corp.,* 220 Md. 200, 151 A.2d 731, 78 A.L.R.2d 692 (1959); *Simmons v. Rhodes & Jamieson, Ltd.,* 46 Cal.2d 190, 293 P.2d 26 (1956); *Dalton v. Pioneer Sand and Gravel Co.,* 37 Wash.2d 946, 227 P.2d 173 (1951)."

We believe without question that the low profile of the go-kart would be obvious to the ordinary consumer, who should be expected to operate the go-kart in a manner to compensate for this limitation.

Indeed, it could be forcefully argued that if a flag had been installed it would have been an invitation to the user to operate upon public roads in contradiction of the warning heretofore noted.

In reaching our conclusion we are mindful of the affidavit of Professor Sisson, above set out. However, it should be noted that his conclusions are based upon what is obvious to an ordinary consumer which would not render a product otherwise

structurally sound "defective" or "unreasonably dangerous."

In light of our finding that the go-kart was neither defective nor unreasonably dangerous, it is unnecessary that we address the issue of the statute of limitations raised by Manco or of the sealed container doctrine raised by Lowe's.

For the foregoing reason the Trial Court is affirmed and the cause remanded for collection of costs below. The costs of appeal are adjudged against the Plaintiffs and their surety.

ANDERSON, J., concurs.

FRANKS, J., dissents.

FRANKS, Judge, dissenting.

The majority holds the warning on the go-kart was adequate or the danger in the operation of the go-kart on a public way was so obvious and open that, as a matter of law, no duty to provide other safety precautions was required to relieve the manufacturer of liability.[1]  I dissent.

The majority relies heavily upon *Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690 (Tenn.1984), which in my view is inapposite. Categorizing riding on go-karts with drinking excessive quantities of alcoholic beverages by minors is unrealistic. In this connection see Comment j of § 402(a), *Restatement of Torts*.

Whether a product is unreasonably dangerous is generally for the jury, *Young v. Reliance Elec. Co.*, 584 S.W.2d 663 (Tenn. App.1979), and only when reasonable minds agree does the issue become one of law. *Ford Motor Co. v. Eads*, 224 Tenn. 473, 457 S.W.2d 28 (1970). Whether the plaintiff has carried the burden of establishing the product is unreasonably dangerous, is for the trier of fact. *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276 (Tenn. App.1977).

As to the adequacy of the warning, Frumer and Friedman in their treatises on products liability observe: "It is clear from the better-reasoned cases that directions for use, which merely tell how to use the product and which do not say anything about the danger of foreseeable misuse, do not necessarily satisfy the duty to warn." 1 Frumer and Friedman, *Products Liability*, § 805(1), 162–68 (1968).

I also believe the record establishes disputed material facts on the issue of whether the go-kart was defectively dangerous, *i.e.*, dangerous to the extent beyond which would be contemplated by a "foreseeable user."[2]

The Supreme Court in *Ellithorpe v. Ford Motor Company*, 503 S.W.2d 516 (Tenn. 1973), when confronted with an alleged design defect rendering the motor vehicle unreasonably dangerous, held manufacturers are required to design their product to be "as safe as is reasonably possible under the present state of the art" and recognized that abnormal use of the product would generally be a defense in the case of strict liability, but concluded: "However, the use of the product will not bar recovery if it is reasonably foreseeable by the manufacturer." *Id.*, at 519. Clearly, it would reasonably be foreseeable by the manufacturer of go-karts that children would operate go-karts upon streets and highways and the issue of whether the manufacturer should have equipped the go-kart with warning devices to compensate for the vehicle's low profile is a disputed issue of fact on this record.

If the other issues raised on appeal are without merit, I would vacate the summary judgment and remand for the purpose of developing the proof on the issue of adequacy of the warning and whether the vehicle's design rendered it unreasonably dangerous within the meaning of the statute.

---

1. Under *The Restatement of Torts (Second)*, the only form of contributory negligence which would relieve the manufacturer of liability is "assumption of the risk". *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516 (Tenn.1973).

2. *Evridge v. American Honda Motor Co.*, 685 S.W.2d 632 (Tenn.1985), requires a manufacturer, in formulating warnings, to take into account the design of the product and its foreseeable use.