Deborah **SMITH,** Plaintiff/Appellant,

v.

**INMAN REALTY COMPANY, Randall's Heating and Air Conditioning, Inc., and L.T.A. Development, Inc.,** Defendants/Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 4, 1992.

Rehearing Denied Sept. 30, 1992.

Permission to Appeal Denied by Supreme Court Jan. 25, 1993.

John S. Colley, III, Colley & Colley, Columbia, for plaintiff/appellant.

David B. Herbert, Joseph M. Huffaker, Ortale, Kelley, Herbert & Crawford, Nashville, for defendants/appellees.

## OPINION

KOCH, Judge.

This appeal involves a realtor's liability for injuries sustained by a visitor at a partially completed house. After stumbling into an open hole in the floor, the visitor filed suit in the Circuit Court for Maury County against the property owner, the realtor, and a subcontractor. The trial court, sitting without a jury, dismissed the claims against the owner and the realtor at the close of the visitor's proof and then awarded her a $7,500 judgment against the subcontractor. The visitor has appealed the dismissal of her suit against the realtor. We have determined that the trial court should not have dismissed the visitor's claims against the realtor on the ground that the realtor did not have sufficient control over the premises to be liable for injuries to persons visiting the partially completed house.

### I.

Deborah Smith was invited to eat dinner with Keith and Ruby Gordon on March 15, 1987. She arrived at the Gordons' home on Burt Drive in Columbia sometime between three and four o'clock in the afternoon. Since Ms. Gordon was still preparing dinner, Ms. Smith decided to visit an open house being conducted by Inman Realty Company ("Inman") at a brick house directly across the street from the Gordons' home.

Ed Green, one of Inman's agents, showed the brick house to Ms. Smith. After her tour, she expressed interest in looking at a house next to the open house that was still under construction. Inman also had a listing agreement on this house, and Mr. Green had shown it to several other visitors that day. Accordingly, Mr. Green escorted Ms. Smith into the house and allowed her to look around. Mr. Green did not caution Ms. Smith about the general dangers associated with houses under construction or about any specific dangerous conditions in this particular house.

The house did not have electrical service, and so its interior was lighted only by the sunlight that came through the windows. While examining a bathroom that had no windows, Ms. Smith stepped into a hole cut in the floor for a heating and air conditioning vent and injured her left foot. After the injury, Mr. Green told Ms. Smith that he did not know about the hole in the floor.

Ms. Smith's injury caused her to miss over forty days of work. In March 1988, she sued Inman, the owner of the house, and the heating subcontractor for $100,000. The trial court heard her evidence in December 1990, and dismissed her claims against Inman and the property owner at the conclusion of her proof. The trial court also awarded Ms. Smith a $7,500 judgment against the heating subcontractor.

### II.

We turn first to the proper standard with which we should review the trial court's dismissal of Ms. Smith's claims against Inman. Ms. Smith's counsel has inaccurately represented in his brief that the trial court dismissed these claims by granting Inman's motion for directed verdict. In fact, the trial court granted Inman's Tenn.R.Civ.P. 41.02(2) motion for involuntary dismissal at the conclusion of the plaintiff's proof. This important procedural distinction results in a dramatically different standard of review.

Motions for directed verdicts pursuant to Tenn.R.Civ.P. 50 are appropriate in jury trials but have no place in nonjury trials. *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977); *Scott v. Pulley*, 705 S.W.2d 666, 672 (Tenn.Ct.App.1985); *Roberts v. Robertson County Bd. of Educ.*, 692 S.W.2d 863, 874 (Tenn.Ct.App.1985). If a party desires to challenge the sufficiency of the plaintiff's proof in a nonjury trial, it must file a motion for involuntary dismissal at the close of the plaintiff's proof pursuant to Tenn.R.Civ.P. 41.02(2).

The respective standards of review of the trial court's disposition of these motions is markedly different. In the case of a motion for directed verdict, the trial court must take the strongest legitimate view of the evidence against the directed verdict and must deny the motion in any

case where all reasonable persons would not reach the same conclusion. *Goode v. Tamko Asphalt Prods., Inc.*, 783 S.W.2d 184, 187 (Tenn.1989); *Maddux v. Cargill, Inc.*, 777 S.W.2d 687, 691 (Tenn.Ct.App. 1989). However, in the case of a motion for involuntary dismissal pursuant to Tenn. R.Civ.P. 41.02(2), the trial court must impartially weigh and evaluate the evidence as it would after the presentation of all the evidence and must deny the motion if the plaintiff has made out a prima facie case. *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d at 740.

■ The manner in which the trial court reviews the evidence varies depending on the type of motion that has been filed. Motions for directed verdict require more certainty in the proof than do motions for involuntary dismissal pursuant to Tenn. R.Civ.P. 41.02(2). In this case, we need not determine, as suggested by Ms. Smith, whether the evidence will support only one conclusion. Instead, we need only determine whether the evidence makes out a prima facie case of liability on Inman's part. We find that it does and that the trial court's dismissal of the claims against Inman was due to an erroneous understanding of a realtor's duty to persons being shown a house still under construction.

### III.

■ The trial court dismissed Ms. Smith's claims against Inman not because of the insufficiency of her proof but because of its legal conclusion that Inman had no duty to make the premises safe or to warn visitors of dangerous conditions.[1] We have determined that the trial court adopted an unduly restrictive view of the scope of Inman's duty.

■ Liability for injuries resulting from dangerous conditions on land or property is not limited to the property owner. Since it is premised on superior knowledge of the property's condition, *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn.1980); *Kendall Oil Co. v. Payne*, 41 Tenn.App. 201, 205, 293 S.W.2d 40, 42 (1955), *cert. denied*, 200 Tenn. 600, 293 S.W.2d 43 (1956), liability may, in proper circumstances, be imposed on possessors or occupiers who do not own the premises.

Accordingly, Restatement (Second) of Torts § 343 (1965) provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

■ Our courts have already recognized that liability for dangerous conditions on property may be imposed on persons who are possessors rather than owners. Thus, while possessors are not insurers of the property's safety, *McCormick v. Waters*, 594 S.W.2d at 387; *Frazier v. Moore*, 651 S.W.2d 240, 242 (Tenn.Ct.App.1983), they are required to use due care under all the circumstances. *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560, 562 (Tenn.Ct. App.1985).

■ While we have imposed liability on business proprietors,[2] innkeepers,[3] landlords,[4] and tenants,[5] we have yet to fashion a workable definition to determine whether

1. Determining whether a duty exists is a legal question for the court. *Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690, 692 (Tenn. 1984); *Reece v. Lowe's of Boone, Inc.*, 754 S.W.2d 67, 71 (Tenn.Ct.App.1988); Restatement (Second) of Torts § 328B (1965).

2. *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560 (Tenn.Ct.App.1985); *Jones v. Zayre, Inc.*, 600 S.W.2d 730 (Tenn.Ct.App.1980).

3. *Zang v. Leonard*, 643 S.W.2d 657 (Tenn.Ct. App.1982).

4. *Jolly Motor Livery Corp. v. Allenberg*, 188 Tenn. 452, 221 S.W.2d 513 (1949); *Tedder v. Raskin*, 728 S.W.2d 343, 347–48 (Tenn.Ct.App. 1987).

5. *Odum v. Haynes*, 494 S.W.2d 795 (Tenn.Ct. App.1972); *Hester v. Hubbuch*, 26 Tenn.App. 246, 170 S.W.2d 922 (1942).

a party is a "possessor" of property. However, Restatement (Second) of Torts § 328E (1965) contains an appropriate definition that is consistent with our case law. It provides:

A possessor of land is

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Other courts have found that realtors showing a house under a listing agreement with the owner are either possessors of the property or are acting on behalf of the possessors of the property for the purposes of Restatement (Second) of Torts § 383 (1965) [6] and, therefore, that they may be held liable for injuries sustained by customers inspecting the property. *Coughlin v. Harland L. Weaver, Inc.*, 103 Cal.App.2d 602, 230 P.2d 141, 144 (1951); *Jarr v. Seeco Constr. Co.*, 35 Wash.App. 324, 666 P.2d 392, 395 (1983).

Based on these principles, we find that the trial court erred when it determined that Inman was not in sufficient possession or control of the property to be held liable for Ms. Smith's injuries. Inman had entered into a contract with the property owner giving it the exclusive right to sell the property. Of necessity, this contract gave Inman the authority to take whatever possession and control of the property that would be reasonably required to effect a sale, including the power to invite prospective buyers onto the property and to conduct tours of the house. Thus, Inman was in possession of the property for the purposes of Restatement (Second) of Torts § 343 (1965) or was at least acting on behalf of the possessor for the purpose of Restatement (Second) of Torts § 383 (1965).

**IV.**

All that remains to be decided is whether Ms. Smith presented enough evidence to withstand Inman's Tenn.R.Civ.P. 41.02(2) motion for involuntary dismissal. We find that Ms. Smith made out a prima facie case for Inman's liability and, therefore, that her case should have survived Inman's motion.

Possessors of property and those acting on their behalf owe a duty of reasonable care to patrons and invitees. *McCormick v. Waters*, 594 S.W.2d at 387; *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d at 562. This duty includes (1) the duty to maintain the premises in a reasonably safe condition, *Haga v. Blanc & West Lumber Co.*, 666 S.W.2d 61, 64 (Tenn.1984); (2) the duty to inspect the premises to discover dangerous conditions reasonably recognizable by common experience and ordinary prudence, *Illinois Cent. R.R. v. Nichols*, 173 Tenn. 602, 612–13, 118 S.W.2d 213, 217 (1938); and (3) the duty either to remove or to warn of the dangerous condition the possessor knows or should reasonably know about. *Dawson v. Sears, Roebuck & Co.*, 217 Tenn. 72, 78, 394 S.W.2d 877, 880 (1965); *Buckeye Cotton Oil Co. v. Campagna*, 146 Tenn. 389, 394, 242 S.W. 646, 647 (1922).

Inman was not required to make the premises absolutely safe in light of the fact that the house was still under construction. However, before it permitted prospective buyers to enter the house, it should have inspected the house to discover dangerous conditions and should have warned persons entering the house for the first time of these conditions. Inman's employee, Mr. Green, conceded that he did neither on the day that Ms. Smith was injured, and Ms. Smith stated that she was given no warnings about any dangerous conditions before she toured the house.

We find that the trial court should not have granted Inman's Tenn.R.Civ.P. 41.-02(2) motion for involuntary dismissal.

6. Restatement (Second) of Torts § 383 (1965) provides:

One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.

However, by doing so, we do not mean to imply that Ms. Smith is entitled to recover from Inman based on the present record. The issues of foreseeability of the specific harm, the obviousness of the dangerous condition, the reasonableness of Mr. Green's conduct at the open house, and Ms. Smith's comparative negligence [7] are issues for the finder of fact to be decided after the presentation of all the proof. *Kendall Oil Co. v. Payne*, 41 Tenn.App. at 206, 293 S.W.2d at 42–43. Therefore, following the remand, the trial court should permit the remaining parties [8] to complete their proof and may then render its decision by applying the correct legal principles to the facts.

## V.

We reverse the portion of the judgment dismissing Ms. Smith's claims against Inman and remand the case for further proceedings consistent with this opinion. We also tax the costs of this appeal in equal proportions to Inman Realty Company and to Deborah Smith and her surety for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.

## OPINION ON PETITION FOR REHEARING

Inman Realty Co. has filed a timely petition for rehearing in accordance with Tenn. R.App.P. 39(a) requesting this court to reconsider its September 4, 1992 opinion in light of *Belote v. Memphis Dev. Co.*, 51 Tenn.App. 423, 369 S.W.2d 97 (1962). Inman cited this case in its brief and expresses concern that we overlooked the case because we did not discuss it in our opinion. We did not discuss the *Belote* case in our original opinion because it was inapposite, not because we overlooked it.

The evidence in this case demonstrates that Inman was in control of the property when Ms. Smith was injured. Inman, therefore, had a duty to its invitees either to remove or to warn them of dangerous conditions it discovered or should have discovered. Unlike, Inman, the realtors in *Belote* were not possessors of the property when Miss Belote fell through the hole in the attic floor. Because of this factual difference, the *Belote* decision provided us with little guidance concerning the proper resolution of this case.

We deny the petition for rehearing and tax the costs of the petition to Inman Realty Company for which execution, if necessary, may issue.

/s/ Samuel L. Lewis
SAMUEL L. LEWIS, Judge

/s/ Ben H. Cantrell
BEN H. CANTRELL, Judge

/s/ William C. Koch, Jr.
WILLIAM C. KOCH, JR., Judge

**7.** After this trial, the Tennessee Supreme Court replaced the traditional doctrine of contributory negligence with the doctrine of comparative negligence. *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn.1992). The comparative negligence doctrine must now be used in "all cases tried or retried" after May 4, 1992.

**8.** The only remaining defendant is Inman since Ms. Smith had voluntarily dismissed several of the parties and has not appealed from the dismissal of her claims against the developer. The subcontractor's liability is also no longer an issue since it has not appealed from the judgment.