IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 7, 2004 Session

**STATE OF TENNESSEE, ex rel, PAUL G. SUMMERS, in his official capacity as the Attorney General and Reporter of Tennessee, and MILTON H. HAMILTON, JR., in his official capacity as the Commissioner of the Tennessee Department of Environment and Conservation, v. B&H INVESTMENTS, INC., CHARLES R. SMITH and ALVIN G. PIERCE**

**Direct Appeal from the Chancery Court for Davidson County**
**No. 02-976-1     Hon. Irvin Kilcrease, Chancellor**

———————————

**No. M2003-01640-COA-R3-CV - Filed September 21, 2004**

———————————

The Trial Court held purchaser of land responsible for prior owner's violations of the Tennessee Water Quality Control Act. On appeal, we reverse in part, vacate in part and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Vacated in Part, and Remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON LEE, J., joined.

Frank J. Scanlon, Nashville, Tennessee, for Appellant.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Elizabeth P. McCarter, Senior Counsel, Office of the Attorney General, Nashville, Tennessee, for Appellees.

**OPINION**

The State instituted this action on February 12, 2001, against defendant B&H Investments, Inc., asking the Court to require the defendant to institute corrective measures to abate pollution occurring on defendant's property, Swallow Bluff Island, pursuant to the Tennessee Water

Quality Control Act, codified at Tenn. Code Ann. §69-3-101 *et seq.*

The State alleged that the Island is a historical site, and contains an ancient Indian village and burial ground, and three endangered species of mussels inhabit the waters surrounding the island. Further, the former owner of the island, BMRE, sought to develop the island into a residential/resort community, but did not obtain the requisite permits, and complaints were made on excessive erosion and mud plumes surrounding the island, due to the development. The Commissioner issued an administrative order finding the developer in violation of the Act, assessed civil penalties and ordered corrective actions. No corrective actions were taken, however, and defendant bought the property with knowledge of the existing problems.

The State filed a Motion for Partial Summary Judgment, and defendant filed an Answer to the Complaint and response to the Motion for Partial Summary Judgment. The Trial Court denied the Motion for Partial Summary Judgment and conducted a hearing on the issues on December 16, 2002. Subsequently, the Court filed a Memorandum Opinion, finding that in August, 1999, the Tennessee Department of Environment and Conservation ("TDEC"), investigated the excavation undertaken by BMRE, which was causing excessive erosion. The Court found that various State witnesses testified that 70% of the bank had been disturbed, there were no erosion controls, that the banks were being reshaped to a slope rather than a vertical bluff, and that there was a "lens of mud" around the island close to the endangered mussels nearby. The Court recited that defendant's witness, Taylor, who was stipulated to be an expert, said that "once uncompacted soil placed along the shoreline eroded away, it returned to a historical rate of erosion" and that this would take about one annual cycle. The Court also found that the witness testified there was no negative impact on the mussels, and that it would take one to two million dollars stabilize the shoreline.

The Court found that on May 4, 2001, the State had recorded a Notice of Lien Lis Pendens and Abstract, along with abstracts for two judgments it had obtained against the prior owners in Hardin County. The Court found that defendant sold the island to Smith and Pierce later in May 2001, and concluded that based on the language of the Act, strict liability was imposed for violations, including strict liability for failure to abate the problem caused by the previous owners. The Court stated "defendants maintain there is no proof of erosion while defendants owned the island, but the Court finds this to be irrelevant because the judgments against previous owners run with the land pursuant to Tenn. Code Ann. §25-5-101(c) and Tenn. Code Ann. §25-5-107, and are binding against all persons having an interest in property." The Trial Court concluded that because the prior judgments ran with the land, defendants had violated Tenn. Code Ann. §69-3-114(b) for failing to furnish a remedial plan, and Tenn. Code Ann. §69-3-108 for altering the body of water without a permit.

Defendant's issues presented on appeal are:

1.      Does the Water Quality Control Act impose strict liability on a subsequent owner to abate a condition of pollution caused by a previous owner?

2.      Did the condition of pollution still exist at the time B&H purchased the island?

3.      Do the previous judgments against former owners run with the land pursuant to Tenn. Code Ann. §25-5-101(c)?

4.      Did the trial court err in finding that B&H was liable under Tenn. Code Ann. §69-3-114(b) for failing to submit a remedial plan based on the prior judgments?

The Trial Court concluded that based on the language of the Act, there was strict liability for failure to abate the pollution problem caused by the previous owners. Defendant contends that the Court was in error because they did nothing to cause the pollution problem, and further, the proof did not establish there was a continuing pollution problem.

The Act, Tenn. Code Ann. §69-3-101 *et seq.*, explains that its purpose is to "abate existing pollution of the waters of Tennessee, to reclaim polluted waters, to prevent the future pollution of the waters, and to plan for the future use of the waters so that the water resources of Tennessee might be used and enjoyed to the fullest extent consistent with the maintenance of unpolluted waters." Tenn. Code Ann. §69-3-102. The Act further provides that an additional purpose is to "enable the state to qualify for full participation in the national pollutant discharge elimination system established under §402 of the Federal Water Pollution Control Act". *Id.*

The Act prohibits any person from altering the "physical, chemical, radiological, biological, or bacteriological properties" of any body of water in the state without a permit, and further prohibits any person from "discharg[ing] any substance into the waters of the state". Tenn. Code Ann. §69-3-108 and 114. The State offered proof that construction activities of the previous owners of the island caused excessive erosion which created a muddy plume around the island and polluted the water. Also, that the State had obtained judgments against the previous owners directing them to take certain actions to abate the pollution.

The Trial Court concluded, based on the evidence, that the Act imposed strict liability on defendants for failure to abate the problem caused by the prior owners. Strict liability is defined as "liability without fault", and is most commonly used in the context of products liability cases, such as where the manufacturer of a defective product is held liable for that product even though he exercised all possible care in the preparation of the product. Black's Law Dictionary 1422 (6th Ed. 1990). As this Court has explained:

> The essential difference between an action in negligence and one in strict liability (or breach of warranty) lies not in the condition of the product but in the requirement in the negligence action of additional proof regarding the nature of the defendant's conduct. In the negligence action, not only must the product itself be found actionable, but the defendant must also be found negligent in letting the product get

into that dangerous condition, or in failing to discover the condition and take reasonable action to eliminate it. In strict liability this is not required; all that the plaintiff must do is show that the product was in the dangerous condition when it left the defendant's control.

*Reece v. Lowe's of Boone, Inc.*, 754 S.W.2d 67, 69 (Tenn. Ct. App. 1988). Thus, strict liability does not require the defendant's conduct be shown to be negligent.

Similarly, when construing this Act, its provisions obviate the necessity of establishing that the discharge or violation was intentional, reckless, or negligent, or that any type of culpable mind-set was involved. It does, however, require a showing that the defendant "altered" the water, or "discharged" any substance, or engaged in some type of activity that violated the Act's provisions, which may arise from the ownership of the offending property.

The Act refers to the Federal Water Pollution Control Act, codified at 33 U.S.C. §1251 *et seq.*, which also has the purpose of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters", and the federal act has likewise been construed as a strict liability statute because any violation of it subjects the violator to liability regardless of the violator's intent. *United States v. Amoco Oil Co.*, 580 F. Supp. 1042 (W.D. Mo. 1984).

The statute does not, however, impose liability without proof of any violation by the owners. *United States v. Allegheny Ludlum Corp.*, 366 F.3d 164 (3rd Cir. 2004). In that case, the Court explained that "strict liability relieves the government of the obligation to show *mens rea*, not the *actus reus*." *Id.* at 175. The Court further explained that strict liability would not hold a permittee liable for a violation if there was no violation shown. *Id.*

The Act does not allow the subsequent owner to avoid responsibility for conditions created by the prior owner which are a continuing violation of the Act. Otherwise, the subsequent owner could escape responsibility for ongoing violations of the Act and thwart the legislative intent. In this case, one of the State's theories was that there was an ongoing pollution problem that was created by the previous owners which had continued unabated. This is a factual dispute which the Trial Court did not resolve by finding liability of the owner under a different theory. Accordingly, we vacate the Trial Court's Judgment on this issue and remand for a further hearing and determination of this factual dispute.

The Court stated "defendants maintain there is no proof of erosion while defendants owned the island, but the court finds this to be irrelevant because the judgments against previous owners run with the land pursuant to Tenn. Code Ann. §25-5-101(c) and Tenn. Code Ann. §25-5-107, and are binding against all persons having an interest in property." The Court found that because these prior judgments ran with the land, defendants had violated Tenn. Code Ann. §69-3-114(b) for failing to furnish a remedial plan, and Tenn. Code Ann. §69-3-108 for altering the water without a permit. The Court apparently based these findings on the prior judgments obtained by the State against the previous owners of the island, however the judgments are not in the record.

Tenn. Code Ann. §25-5-101(c) provides:

Attachments, orders, injunctions and other writs affecting title, use or possession of real estate, issued by any court, shall be effective against any person having, or later acquiring, an interest in such property who is not a party to the action wherein such attachment, order, injunction or other writ is issued only after an appropriate copy or abstract, or a notice of lis pendens, is recorded in the register's office of the county wherein the property is situated. If an abstract is used, the contents shall be as prescribed in § 25-5-108.

Thus, any order which affects the "title, use or possession" of real property is effective against subsequent owners of the property, but only after a copy, abstract, or notice of lis pendens is recorded in the register's office for the appropriate county. Subsections (a) and (b) of this statute deal with "judgments and decrees", and state that these judgments and decrees "shall be liens upon the debtor's land from the time a certified copy of the judgment or decree shall be registered in the lien book in the register's office of the county where the land is located." Tenn. Code Ann. §25-5-101.

Likewise, in Tenn. Code Ann. §25-5-108, the statute refers to the type of abstract which must be filed for a "judgment or decree", and explains that it must contain the parties' names, case number, court, date entered, etc. The statute then sets forth the information required for an abstract dealing with a "bill in equity, attachment, bill, lis pendens, or judicial attachment", and states that it must contain the same information plus a "description of the property upon which it is sought to fix the lien." Tenn. Code Ann. §25-5-108(b). Considering these statutes in per materia, the abstract required by Tenn. Code Ann. §25-5-101(c) would have to contain a description of the property upon which a judgment lien was obtained, as well as the nature and extent of the Judgment.

As this Court has explained:

The law in Tennessee with respect to the manner in which judgment liens are obtained is governed by statute. See Tenn. Code Ann. §§ 25-5-101 to -109 (1980 & Supp.1997). A judgment obtained in Tennessee becomes a lien on the debtor's real property when the judgment is recorded in the register's office of the county where the land is located. See Tenn. Code Ann. § 25-5-101(b) (Supp.1997). Upon proper recordation, the judgment also becomes effective against any person having or later acquiring an interest in the debtor's real property regardless of whether that person was a party to the action resulting in the judgment. See Tenn. Code Ann. § 25-5-101(c) (Supp.1997); Tenn. Code Ann. § 66-24-119 (1993). The judgment creditor must execute upon the lien within three years of the entry of the judgment. See Tenn. Code Ann. § 25-5-105(a) (Supp.1997).

*ATS, Inc. v. Kent*, 27 S.W.3d 923, 924 (Tenn. Ct. App. 1998).

Thus, in order for the judgments rendered against previous owners of the island to be effective as to those "having or later acquiring" an interest in the island, or to find that the judgments "run with the land" as the Trial Court phrased it, would require that a proper copy or abstract of the judgment be recorded in the register's office of Hardin County. In this case, both parties concede that a Notice of Lis Pendens and Abstract was filed in the Hardin County Registrar's Office on May 4, 2001, and that abstracts of the prior judgments were filed therewith, as found by the Trial Court. This was during the time that the property was owned by B&H, and prior to the sale to Pierce and Smith.

The abstracts, however, only mention that there was a judgment obtained against the previous owners for monetary damages, and do not mention the island, do not provide a description of the property, or in any way provide notice that a lien was intended to be placed thereon. Without the recordation of a document that complies with the statutes, the rights of the subsequent purchasers are not affected. Tenn. Code Ann. §25-5-101; *see, e.g.*, *American Nat. Bank & Trust Co. of Chatt. v. Wilds*, 545 S.W.2d 749 (Tenn. Ct. App. 1976).

As the Supreme Court has recognized, "judgment liens on real estate are purely statutory", and did not exist at common law. *Massachusetts Mut. Life Ins. Co. v. Taylor Implement & Vehicle Co.*, 195 S.W. 762 (Tenn. 1917). Accordingly, the statutory requirements are strictly construed, and the lien is "lost if the statutory provisions are not strictly complied with." *Weaver v. Smith*, 50 S.W. 771 (Tenn. 1899). In this case, since the statutory requirements were not strictly complied with, the filing cannot be held to be "effective against any person having, or later acquiring, an interest in such property". Tenn. Code Ann. §25-5-101(c). The Trial Court was in error in relying on the filing of the abstracts to find defendant liable for the Judgments entered against the prior owner.

In sum, the Trial Court erred in ruling that the judgments against previous owners "ran with the land" pursuant to Tenn. Code Ann. §25-5-101(c), and in imposing liability on subsequent owners on that basis. We remand the case to the Trial Court for a factual determination whether the actions of the prior owners constitute ongoing violations of the Tennessee Water Quality Control Act, and if there are ongoing violations, the Trial Court will fashion remedies in accordance with the Act against defendant. The cost of the appeal is assessed one-half to the State of Tennessee and one-half to defendant.

_____
HERSCHEL PICKENS FRANKS, P.J.