IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 19, 2014 Session

## KATHRYNE B. F. v. MICHAEL B.

**Direct Appeal from the Circuit Court for Shelby County**
No. CT00182208     Karen R. Williams, Judge

## No. W2013-01757-COA-R3-CV - Filed March 13, 2014

In this post-divorce case, Mother/Appellant appeals the trial court's grant of Father/Appellee's motion for involuntary dismissal of her petition to be named the primary residential parent of the parties' child. Implicitly finding that there has not been a material change in circumstances since the entry of the last custodial order, the trial court granted Father's Tennessee Rule of Civil Procedure 41.02(2) motion to dismiss Mother's petition. The trial court also denied Father's request for attorney's fees under Tennessee Code Annotated Section 36-5-103(c). Because the trial court's order does not comply with Rule 41.02(2) in that it neither finds the facts specially upon which the court based its determination that there has been no material change in circumstances, nor indicates the court's reason(s) for denial of Father's request for attorney's fees, we are unable to conduct a meaningful review. Vacated and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined, and HOLLY M. KIRBY, J., filed a separate concurring opinion.

Mitzi C. Johnson, Collierville, Tennessee, for the appellant, Kathryne B. F.

David F. Kustoff, Memphis, Tennessee, for the appellee, Michael B.

**OPINION**

Both the procedural and factual histories in this case are largely undisputed. Michael B. ("Father," or "Appellee") and Kathryne B. F. ("Mother," or "Appellant") were divorced by final decree entered on July 16, 2008. One child, Caleb M. B., was born to the marriage in October 2006.[1] At the time of their divorce, the parties entered into a permanent parenting plan, whereby Mother was designated as the child's primary residential parent, and Father was awarded 118 days of parenting time.

In 2011, Mother became engaged to a resident of Australia. On January 6, 2011, to prevent Mother from moving to Australia with the child, Father filed a petition opposing removal of the child from the jurisdiction of the Circuit Court of Shelby County. Mother opposed the petition. Mother married her Australian fiancé in early March of 2011. Thereafter, on March 24, 2011, the trial court heard Father's petition. On May 5, 2011, the court issued a letter ruling, wherein it granted Father's petition. Although the court found that there was "no vindictive" motive for Mother's move to Australia, and that the move had a "reasonable purpose," the court ultimately held that relocation posed a "threat of specific and serious harm to the child." Tenn. Code Ann. §36-6-108(d)(2). In reaching its decision, the court noted that:

> The parties in this case . . . have enjoyed, since the child's birth 4 years ago, a nearly ideal co-parenting relationship that included both sets of grandparents and nearly seamless transition from one home to the other.
>
> *                                *                                *
>
> Both parties agree that the child spends substantially more time with Mother than with Father. However, the Court notes that if you segregate out the time spent with grandparents, then the parents are more nearly equal.
>
> *                                *                                *
>
> [T]he child has been raised by his Mother, his Father, his maternal grandparents and his paternal grandparents . . . . Both [parents] agree that the grandparents have been actively involved in the day-to-day life of this child.

---

[1] In cases involving minor children, it is this Court's policy to redact names to protect the children's identity.

Based upon the foregoing findings, the court concluded that Father had proven a risk of substantial harm under the parental relocation statute. The court then weighed the relocation factors outlined at Tennessee Code Annotated Section 36-6-108(e) using a "best interest" analysis, and ultimately changed the child's primary residential parent from Mother to Father. The trial court entered an order reflecting that decision on June 8, 2011, *nunc pro tunc*, to May 5, 2011. In its ruling, the court focused primarily on Section 36-6-108(e)(5), i.e., "the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment," noting that staying with Father "would permit [the child] to continue to be involved with his Father and both sets of grandparents as he is accustomed to being." The court also focused on Section 36-6-108(e)(6), i.e., "[t]he stability of the family unit of the parents," noting that Mother's new husband had "testified that he is not a 'child guy' and has little experience with children." Although the court went on to note that Mother's husband seemed to have "taken to parenting and appears to enjoy it so far," it noted that full-time parenting would be "a very large change for him to adjust to . . . ." The parties were ordered to present a parenting plan to the court; however, this parenting plan was not entered in the trial court until March 1, 2012. Father testified that the delay was caused because the parties had difficulty coming to terms on certain aspects of the parenting plan. Ultimately, the parties agreed to the essential terms of the parenting plan. Under the plan, Caleb spends alternating Christmas breaks with his Mother in Australia. He spends his summer vacations with Mother, and Mother has the option of having Caleb on his breaks. In addition, the parenting plan indicates that should Mother choose to be in the United States, the child may stay primarily with her for up to six weeks in the United States, and that the parties will ostensibly revert back to the schedule they had when Mother was primary residential parent. Mother did not appeal from the trial court's order, naming Father as the child's primary residential parent and denying her permission to relocate to Australia with the child. Accordingly, and as discussed *infra*, the order naming Father as the child's primary residential parent became *res judicata* on the subject of custody and, therefore, can only be modified upon a showing of a material change in circumstances. Although some of Mother's arguments in her appellate brief tend to focus on the trial court's ruling on Father's petition opposing relocation and naming Father the primary residential parent, the June 8, 2011 order is not the subject of the instant appeal. However, even though we are not reviewing the June 8, 2011 order, it is nonetheless germane to this appeal in that this order outlines the circumstances as they existed initially and against which the question of material change is measured.

On January 31, 2013, Mother filed a petition to modify the parenting plan, which petition is the subject of the instant appeal. Therein, she alleged that there had been a substantial and material change of circumstances since the entry of the court's June 8, 2011 order. Mother averred a change in circumstances based upon her assertion that the "minor child currently resides with the paternal grandmother . . . ." Mother asserted that:

[A]lthough Father is designated as the primary residential parent, the minor child has primarily resided with and is being raised by the paternal grandmother and not Father. Although it was contemplated that the child would enjoy time with both sets of grandparents, it certainly was not contemplated by Mother or the Court that the Father would defer his parenting responsibilities to the paternal grandmother and that she would be the primary caregiver of the minor child.

Father opposed Mother's petition, which was heard by the court on April 12, 2013, May 28 and 31, 2013, and July 17, 2013. At the close of Mother's proof, Father moved for involuntary dismissal of the petition, under Tennessee Rule of Civil Procedure 41.02(2), on the ground that Mother had not shown a material change in circumstances to warrant a change of the child's primary residential parent. The trial court did not immediately rule on the motion; rather, it held the motion in abeyance until it heard Father's evidence. At the close of all evidence, Father renewed his motion for involuntary dismissal, and the trial court granted the motion at that time. On July 30, 2013, the trial court entered an order, dismissing Mother's petition and denying Father's request for attorney's fees. The order incorporates, by reference, the trial court's ruling from the bench, which we will discuss in detail below.

Mother appeals. She raises three issues for review as stated in her brief:

> 1. Whether the Circuit Court erred in granting [Father's] motion to dismiss the petition to modify [the] parenting plan?
>
> 2. Whether the Circuit Court erred in not modifying the permanent parenting plan?
>
> 3. Appellant requests attorney fees on appeal?

In the posture of Appellee, Father raises the following, additional issues for review:

> 1. Whether the trial court erred in not granting Father's request for counsel fees at trial?
>
> 2. Father requests an award of counsel fees on appeal.

As noted above, this case was adjudicated upon the trial court's grant of Father's motion for involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41.02(2). This Rule

provides:

> After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court grants the motion for involuntary dismissal, the court shall find the facts specially and shall state separately its conclusion of law and direct the entry of the appropriate judgment.

A motion for involuntary dismissal pursuant to Rule 41.02(2) challenges the sufficiency of the plaintiff's proof. *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002); *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 821 (Tenn. Ct. App. 1992). A claim may be dismissed pursuant to a Rule 41.02(2) motion if, based on the law and the evidence, the plaintiff has failed to demonstrate a right to the relief it is seeking. *Id.*; *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977). Motions under Tennessee Rule of Civil Procedure 41.02(2) require less certainty than motions for directed verdict under Tennessee Rule of Civil Procedure 50, governing motions for directed verdicts in jury trials.[2] *C.F.W. Constr.*, 557 S.W.2d at 740; *Inman Realty Co.*, 846 S.W.2d at 822. Thus, a court faced with a Rule 41.02(2) motion need only impartially weigh and evaluate the plaintiff's evidence just as it would after all the parties had concluded their cases and may dismiss the plaintiff's claims if the plaintiff has failed to make out a *prima facie* case by a preponderance of the evidence. *Id.* at 520–21; *Thompson v. Adcox*, 63 S.W.3d 783, 791

---

[2] For purposes of edification, a Tennessee Rule of Civil Procedure 41.02 motion for involuntary dismissal in a bench trial is to be distinguished from a Tennessee Rule of Civil Procedure 50 motion for directed verdict in a jury trial. *See Burton*, 129 S.W.3d 513. In the *Burton* case, the court explained that "motions for directed verdicts have no place in bench trials, while Tenn. R. Civ. P. 41.02(2) motions have no place in jury trials." *Id.* at 520. A Rule 50 motion for directed verdict provides a vehicle for deciding questions of law. The question presented is whether the plaintiff has presented sufficient evidence to create an issue of fact for the jury to decide. *Id.* The courts do not weigh the evidence when they answer this question, nor do they evaluate the credibility of the witnesses. *Id.* Rather, they review the evidence in the light most favorable to the non-moving party, give the non-moving party the benefit of all reasonable inferences, and disregard all the evidence contrary to the non-moving party's position. *Id.*

(Tenn. Ct. App. 2001).

The standard by which the appellate court reviews a trial court's grant of a Rule 41.02 involuntary dismissal is governed by Tennessee Rule of Appellate Procedure 13(d). ***Building Materials Corp. v. Britt***, 211 S.W.3d 706, 711 (Tenn. 2007); ***Burton***, 129 S.W.3d at 521. This is because the trial court has used the same reasoning to dispose of the motion that it would to make a final decision at the close of all the evidence. ***Burton***, 129 S.W.3d at 521. Thus, we review the record on appeal *de novo* with a presumption that the trial court's factual findings are correct and we will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or unless the trial court has committed an error of law affecting the outcome of the case. ***Id***. We will also give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses. ***Id***.

## Material Change in Circumstance

It is well settled that "[a] custody decision, once final, is *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made." ***Scofield v. Scofield***, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing ***Young v. Smith***, 246 S.W.2d 93, 95 (Tenn. 1952)); ***Steen v. Steen***, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001); ***Solima v. Solima***, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998); ***Long v. Long***, 488 S.W.2d 729, 731–32 (Tenn. Ct. App. 1972). However, because children's and parents' circumstances change, our courts are "empowered to alter custody arrangements when intervening circumstances require modifications." ***Scofield***, 2007 WL 624351, at *2 (citing Tenn. Code Ann. § 36-6-101(a)(1)); *see also* ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)).

Modification of an existing custody or visitation arrangement involves a two-step analysis. Tenn. Code Ann. § 36-6-101(a)(2)(B)–(C); *see also* ***Boyer v. Heimermann***, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). First, the parent attempting to modify the existing custody or visitation arrangement must prove that a material change in circumstances has occurred. Tenn. Code Ann. § 36-6-101(a)(2)(B)–(C); *see also* ***Taylor v. McKinnie***, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008) (citing ***Kendrick v. Shoemake***, 90 S.W.3d 566, 570 (Tenn. 2002)). "We recognize that the circumstances of children and their parents inevitably change-children grow older, their needs change, one or both parties remarry. But not all changes in the circumstances of the parties and the child warrant a change in custody." ***Cosner v. Cosner***, No. E2007-02031-COA-R3-CV, 2008 WL 3892024, at *4 (Tenn. Ct. App. Aug. 22, 2008). "There are no hard and fast rules for when there has been a change of circumstances sufficient to justify a change in custody." ***Id.*** (citing ***Cranston v. Combs***, 106 S.W.3d 641, 644 (Tenn. 2003)).

However, to determine whether a material change in circumstances has occurred, the court should consider whether: "(1) the change occurred after the entry of the order sought to be modified; (2) the changed circumstances were not reasonably anticipated when the underlying decree was entered; and (3) the change is one that affects the child's well-being in a meaningful way." *Cosner*, 2008 WL 3892024 at *4 (citing *Kendrick*, 90 S.W.3d at 570); *see also Cranston*, 106 S.W.3d at 644; *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn.2002).

We note that the determination of whether a "material change of circumstances" has occurred requires a different standard depending upon whether a parent is seeking to modify custody (i.e., change the primary residential parent) or modify the residential parenting schedule. Tenn. Code Ann. § 36-6-101(a)(2)(B)–(C); *see also Pippin v. Pippin*, 277 S.W.3d 398, 406–07(Tenn. Ct. App. 2008) (citing *Massey–Holt v. Holt*, 255 S.W.3d 603 (Tenn. Ct. App. 2007)). As previously stated by this Court, "a 'change in circumstance' with regard to the parenting schedule is a distinct concept from a 'change in circumstance' with regard to the identity of the primary residential parent." *Massey–Holt*, 255 S.W.3d at 607. Here, we are dealing with a petition to change the child's primary residential parent from Father to Mother. Tennessee Code Annotated Section 36-6-101(a)(2)(B) discusses the requirement of a material change in circumstances in this situation, stating:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.[3]

---

[3] In contrast, Tennessee Code Annotated Section 36-6-101(a)(2)(C) establishes a lower threshold for modification of a residential parenting schedule. *Scofield*, 2007 WL 624351, at *3 (citing *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2, n.3 (Tenn. Ct. App. Aug. 18, 2006) (holding that Tennessee Code Annotated Section 36-6-101(a)(2)(C) "sets a very low threshold for establishing a material change of circumstances")). In pertinent part, Tennessee Code Annotated Section 36-6-101(a)(2)(C) provides:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of
> (continued...)

If the petitioner makes a *prima facie* case for a material change in circumstances, then the court must determine whether a change in custody or visitation is in the best interest of the child. *See **Boyer v. Heimermann***, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007);.*In re J.C.S.*, No. M2007-02049-COA-R3-PT, 2008 WL 2924982, at *6 (Tenn. Ct. App. July 28, 2008). This determination requires consideration of a number of factors, including those set forth at Tennessee Code Annotated Section 36-6-106(a) to make an initial custody determination, and those set forth at Tennessee Code Annotated Section 36-6-404(b) to fashion a residential schedule.

As noted above, the trial court incorporated its ruling from the bench into its July 30, 2013 order by reference. The trial court's ruling provides, in pertinent part, as follows:

> The Court finds that there has been no material change of circumstance since the last hearing. At that time Caleb had been raised by his mother, his father, his paternal grandparents and his maternal grandparents. This Court will not punish any parent for being gainfully employed.
> So to say that it is—father is not being a good parent because he works what we used to call a split shift, 7:30 [a.m.] to 4:00 [p.m.], 8:30 [a.m.] to 5:00 [p.m.], 2:00 [p.m.] to 10:30 [p.m.] in some random pattern, to punish him as a parent for doing that makes no sense. Likewise, if Caleb were to move to Australia, his mother works five days a week, 40 hours a week, but when he's in Australia there are no grandparents to cover that time between when Caleb would leave school and when the parent would get home.
> Here's our obstacle. Right now, Caleb is so young that he has to go to bed very early. That's going to change over time. Also, during the school year, he has to get up very early to be able to be at school. . . .
> So with Caleb in Memphis here are the four choices that the Court believes father had: he could hire a live-in nanny . . . ; he could remarry and have a stay-at-home step-mother; he

(...continued)

circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

could move into his parents' home; or he could have the grandparents move into his home. The fifth choice was the choice that he chose, that is, to allow the child to sleep in the same bed every school night, to be there with him most nights as he goes through his get-ready-for-bed ritual . . . . On mornings when he's not working he's there to take the child to school.

I do not see any proof that father is not paying attention to this child . . . . I don't see that Caleb's life is any different now than it was before, and that's—until that step is reached we can't go beyond.

I'm going to dismiss the petition.

Before turning to the record, and as set out above, Tennessee Rule of Civil Procedure 41.02 mandates that "the court shall find the facts specially and shall state separately its conclusion of law." As set out in context above, the trial court's "findings" in this case are more conclusions than findings. This Court has previously held that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at \*8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id*.; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App.1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at \*8 (quoting *In re M.E. W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at \*19 (Tenn. Ct. App. April 21, 2004)). Without findings of fact, we cannot discern the basis for the trial court's decision, "and we are unable to afford appropriate deference to the trial court's decision." *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at \*4 (Tenn. Ct. App. Nov.8, 2012).

In making a determination of whether there has been a material change in circumstances, we would expect the trial court to consider such questions as whether: "(1) the change occurred after the entry of the order sought to be modified; (2) the changed circumstances were not reasonably anticipated when the underlying decree was entered; and (3) the change is one that affects the child's well-being in a meaningful way." *Cosner*, 2008 WL 3892024 at \*4 (citing *Kendrick*, 90 S.W.3d at 570). While we recognize that there are no "no hard and fast rules for when there has been a change of circumstances sufficient to justify a change in custody," *id.*, we would anticipate that the trial court would synthesize the evidence it relied on and discuss it specifically in reaching its factual conclusions. Indeed, the trial on this cause took place over four days and involved several witnesses and exhibits. However, the trial court failed to cite any evidence from the trial that was used to support its decision. For example, in its statements above, the trial court concludes that: "I do not see

any proof that father is not paying attention to this child . . . . I don't see that Caleb's life is any different now than it was before." However, the court does not explain what evidence in the record led it to reach these conclusions. In this case, Mother argues that Caleb's life has changed because he is now spending every school night with his paternal grandparents. To explain the trial court's conclusion that this fact does not constitute a material change in circumstances, the better practice would have been to note the existing circumstances, and then evaluate the evidence to explain why that evidence did not lead to a conclusion that the child's circumstances changed. Without some discussion of the facts as they existed at the time custody was vested with Father, this Court is unable to evaluate whether the circumstances have, in fact, changed since that time. Additionally, the court devotes a substantial portion of its oral ruling to Father's "four [or five] choices." However, no evidence exists in the record to indicate that Father actually considered any of the "four choices" the trial court outlines. Accordingly, the trial court's statements are not instructive as to whether a material change in circumstances occurred in this case; discussion of the actual facts presented by the testimony and exhibits, and how those facts influenced the trial court's decision, would have allowed this Court to give the trial court's decision appropriate deference and to determine where the preponderance of the evidence lies. As previously discussed, Rule 41.03 requires that the court make its findings "specially," in these cases. "Specially," denotes a measure of particularity and distinction that can only be accomplished by discussion of the evidence that is unique to the case.[4] Considering the amount of evidence that was presented in this case (i.e., some 555 pages of transcript, and 15 accompanying exhibits), we would anticipate the court's "findings" to include discussion of the testimony and/or exhibits that the trial court relied upon or found particularly significant in reaching its conclusions. However, the anticipated findings are simply lacking in this case.

Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). However, this Court has indicated that we may "soldier on" with our review despite the trial court's failure to make sufficient findings of fact and conclusions of law, in certain limited circumstances:

> On occasion, when a trial judge fails to make findings of fact
> and conclusions of law, the appellate court "may 'soldier on'

---

[4] The Advisory Commission Comment to Rule 41.02(2) equates the trial court's requirements under this Rule to those requirements contemplated by Rule 52.01: "The final sentence of Rule 41.02(2) deletes the requirement of a request for written findings of fact and conclusions of law. Instead, in conformity with Rule 52.01, findings of fact and conclusions of law are required without request."

10

when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" ***Hanson v. J.C. Hobbs Co., Inc***., No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012) (quoting ***Simpson v. Fowler***, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)).

***Pandey v. Shrivastava***, No. W2012-00059-COA-R3-CV, 2013 WL 657799 (Tenn. Ct. App. Feb. 22, 2013). Here, the trial court held that there was no material change in circumstances to justify a change of the child's primary residential parent. However, as noted above, we cannot ascertain the trial court's reasoning from its order, or from the incorporated statements from the bench, *supra*. The determination of custody of a child is a very fact specific inquiry, and that inquiry is within the purview of the trial court, not the appellate court. *See **In re T.C.D.***, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007) ("The determinations of whether a material change in circumstances has occurred and where the best interests of the child lie are factual questions."). Our role is to review those specific findings against the record. Unfortunately, because we do not know the basis of the court's decision (i.e., what specific evidence the court relied upon in making its determination concerning change of circumstances), we cannot perform our role of reviewing that decision. Accordingly, we must vacate the order of the trial court and remand the case for further proceedings, including, but not limited to, compliance with the mandates of Rule 41.02(2).

We note, however, that our holding should not be construed as limiting the trial court from considering additional evidence regarding how the parties' circumstances have changed since the entry of the trial court's final order in July of 2013. This Court has previously recognized that the circumstances of children and their parents change over time. *See **In re C. W.***, --- S.W.3d ----, 2013 WL 1501876, at *8 (Tenn. Ct. App. April 11, 2013). In ***In re C. W.***, the Tennessee Court of Appeals noted that when a trial court is directed to reconsider an issue on remand that involves the circumstances of children and their parents, "the trial court should endeavor to ascertain and give effect to the parties' actual circumstances, which will necessarily change over the course of time, e.g., people remarry, have more children, insurance premiums rise and fall, and child care needs change." ***Id.*** Accordingly, the trial court may, in its discretion, consider such additional evidence to insure that any custody order is based on "the parties' actual circumstances." ***Id.***

### Attorney's Fees

In the posture of Appellee, Father appeals the trial court's denial of his request for attorney's fees incurred at the trial level. Tennessee Code Annotated Section 36-5-103(c) provides, in relevant part, that:

The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred . . . in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

This statute vests discretionary authority in the court to award such fees in custody cases. *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). "In determining whether an award for attorney's fees is warranted, we should consider, among other factors, the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the requesting party has been acting in good faith." *Id.* (citing *Parchman v. Parchman*, No. W2003-01204-COA-R3-CV, 2004 WL 2609198, at *6 (Tenn. Ct. App. Nov.17, 2004)). We review the trial court's decision concerning the award of attorney's fees using the less stringent "abuse of discretion" standard of review. *Richardson v. Spanos*, 189 S.W.3d 720, 729 (Tenn. Ct. App. 2005). Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted). A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." *Id*. The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Id*.

It is well settled that a trial court speaks through its orders*. Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1997). In its order June 8, 2011, the trial court simply states that Father's request for attorney's fees is denied, and provides no explanation for its decision. Again, the lack of explanation in the court's order stymies our ability to review the court's decision for an abuse of discretion. Accordingly, we vacate that portion of the order denying Father's attorney's fees and remand for specific findings concerning the trial court's reasons for the denial of Father's request.

In addition, both parties ask this Court to award them their respective attorney's fees and costs incurred in prosecuting and defending this appeal. We glean from Father's brief that he is seeking these fees on frivolous appeal grounds as his argument is that Mother brought her petition in an effort to revisit the *res judicata* relocation issues. Tennessee Code Annotated Section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

However, "[i]mposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable, which is rare." ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 342 (Tenn.2010). Because we are unable to properly review the trial court's decision in this case, we cannot conclude that Mother's petition was frivolous or brought for any vindictive purpose. Accordingly, Father is not entitled to his attorney's fees for a frivolous appeal. Further, even if we assume, *arguendo*, that the parties are seeking their appellate attorney's fees based upon Tennessee Code Annotated Section 36-5-103(c), *supra*, given our decision to vacate the judgment of the trial court, we decline to award such attorney's fees at this time.

For the foregoing reasons, we vacate the order of the trial court, dismissing Mother's petition and denying Father's request for attorney's fees. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed one-half against the Appellant/Mother, and her surety, and one-half against the Appellee/Father, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE