**FILED**

**October 25, 2016**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 3:06 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT COOKEVILLE

| | | |
|---|---|---|
| **Christopher Miller** | ) | **Docket No.: 2015-04-0196** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 54638-2015** |
| **TRW Automotive U.S., LLC** | ) | |
| **Employer.** | ) | **Judge Robert Durham** |

---

## COMPENSATION HEARING ORDER GRANTING EMPLOYER'S MOTION FOR INVOLUNTARY DISMISSAL

---

This matter came before the undersigned Workers' Compensation Judge on October 19, 2016, for a Compensation Hearing upon the Petition for Benefit Determination filed by Christopher Miller pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Miller filed the PBD to determine if TRW Automotive U.S., LLC, is obligated to pay for his emergency room treatment incurred on July 9, 2014.[1,2]

The dispositive issue is whether Mr. Miller sustained an injury to his left forearm that arose primarily out of and in the course and scope of his employment with TRW.[3] A secondary issue is whether Mr. Miller was justified in seeking unauthorized emergency room treatment on July 9, 2014, and is thus entitled to reimbursement for that expense. Following Mr. Miller's presentation of his proof, TRW's counsel moved for an involuntary dismissal pursuant to Rule 41.02 of the Tennessee Rules of Civil Procedure. The Court granted TRW's Motion based on the following findings of fact and conclusions of law.

---

[1] At the hearing, Mr. Miller stipulated the only workers' compensation benefit requested was reimbursement for the emergency room visit.

[2] Mr. Miller moved for a continuance at the beginning of the hearing on the basis that he attempted to compel by subpoena certain witnesses to testify at the hearing, but they did not appear. However, Mr. Miller attempted to serve these witnesses by certified mail and by providing a copy to TRW's counsel. The Court is unaware of any authority that allows subpoenas to be served in this fashion, and in any event, Mr. Miller provided no evidence to show any of the individuals actually received the subpoenas. As a result, Mr. Miller's Motion was denied.

[3] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.

1

## Findings of Fact

1. Mr. Miller's employment at TRW required him to operate a machine that exposed him to cleaning fluids. Mr. Miller worked second shift at TRW.

2. Mr. Miller developed a rash on his left forearm at least one month prior to July 9, 2014, the date of the alleged injury.

3. Prior to beginning his shift on July 9, Mr. Miller spoke to Kathy Paris, TRW's workers' compensation claims administrator, about the rash. He agreed to try some hydrocortisone cream she offered him to see if it would alleviate his symptoms.

4. Mr. Miller testified that during his shift on July 9, a co-worker grabbed him by the left forearm while wearing a glove covered in cleaning fluids. He further testified this action worsened the sores on his rash.

5. Mr. Miller went to his line supervisor, Justin Harpe, and requested authorization to go to the emergency room for treatment of his rash. Mr. Harpe refused to authorize such treatment and called Ms. Paris. Mr. Harpe told Mr. Miller he could see a panel physician the next morning. Mr. Miller refused to wait and sought treatment for his rash at University Medical Center emergency room that night.

6. The physician chart from UMC noted Mr. Miller claimed to suffer from a chemical burn with the symptoms beginning gradually approximately one month earlier. The record states, "Pt. states that he is being repeatedly exposed to potassium hydroxide at work. The chemical gets sprayed on his skin and he is having a burning type reaction. Pt. c/o ongoing rash with burning sensation when exposed to water or creams." On examination, a physician's assistant noted a "moderate rash" and described it as "erythematous, excoriated, nonspecific contact dermatitis on the palmar aspect of left forearm and dorsal aspect of left forearm." The hospital provided Mr. Miller with a corticosteroid injection and discharged him from care.[4] The record does not recount any history wherein Mr. Miller described being grabbed by the forearm by a co-worker, thus exacerbating his symptoms.

7. At some point over the next few days, Mr. Miller completed and signed an accident form for TRW in his own handwriting. Although the designated box contained ample space for a detailed explanation, Mr. Miller simply wrote, "Put hydrocortisone on an [sic] rash area that has resulted from continued exposure to KHO." *Id.* There is no

---

[4] This record, along with a discharge summary, was the only medical evidence offered by Mr. Miller. He did attempt to admit a copy of medical bills along with some receipts for out-of-pocket payments, but the records were uncertified and being offered without any evidentiary foundation; thus they were excluded upon objection by TRW's counsel.

2

mention of a co-worker grabbing his arm.[5]

8.    Mr. Miller admitted he had wanted to transfer to another workstation for some time prior to his alleged injury, but TRW had given the job to another employee.  He further admitted he felt TRW's decision showed favoritism to the other employee.

### Conclusions of Law

With regard to Orders of Involuntary Dismissal, Rule 41.02(2) (2016) of the Tennessee Rules of Civil Procedure provides:

> After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant . . . may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief[.] . . . If the court grants the motion for involuntary dismissal, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

Motions for involuntary dismissal pursuant to Tenn. R. Civ. P. 41.02(2) do not raise questions of law but rather challenge the sufficiency of the plaintiff's proof. *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 821 (Tenn. Ct. App. 1992); *Merriman v. Smith*, 599 S.W.2d 548, 560 (Tenn. Ct. App. 1979). "A claim may be dismissed pursuant to a Tenn. R. Civ. P. 41.02(2) motion to dismiss if, based on the law and the evidence, the plaintiff has failed to demonstrate a right to the relief it is seeking." *Nazi v. Jerry's Oil Co.*, No. W2013-02638-COA-R3-CV, 2014 Tenn. App. LEXIS 417, at *12 (Tenn. Ct. App. 2014).

The Court considers the following legal principles in reaching its conclusions of law in this matter.  The Court must interpret the Workers' Compensation Law fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015).  The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim, including causation.  *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

In order to establish causation, an employee must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes."  Tenn. Code Ann. § 50-6-102(14)(C) (2015).  The term "reasonable degree of medical certainty"

---

[5] Mr. Miller did testify that a report had been completed previous to the one submitted as evidence, which contained a reference to a co-worker grabbing his arm, but he did not provide any other evidence corroborating this account.

means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

In this instance, the Court finds Mr. Miller failed to produce any expert medical evidence linking his rash to his employment with TRW. The medical records provided diagnosed Mr. Miller with contact dermatitis, but failed to give any opinion as to causation other than a recitation of his history. As a result, he has provided insufficient evidence to prevail on the issue of causation.

Furthermore, Mr. Miller refused to wait to choose an authorized physician from a panel offered by TRW, and instead chose to seek emergent care after Mr. Harpe explicitly informed him TRW would not authorize it. Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654, 656 (Tenn. 1986).[6] In *Buchanan,* the Supreme Court concluded that the statute:

> [M]akes it clear that the intent [of the Legislature] . . . was for the employee to certainly do no less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy.

*Id.* at 657. In addition, the Tennessee Supreme Court has held that when an employee receives medical care for a work-related injury that the employer did not authorize, the employee must establish the necessity and reasonableness of the charges before the employer is responsible. *Moore v. Town of Collierville,* 124 S.W.3d 93, 98 (Tenn. 2004).

In this matter, Mr. Miller attempted to justify his need for emergent care by claiming Mr. Jumper grabbed his left forearm with a glove covered in cleaning fluid, which severely exacerbated his symptoms. However, given the entire record before it, the Court finds Mr. Miller is not credible regarding this account. The accident report completed by Mr. Miller does not describe any incident involving a co-worker. While Mr. Miller claimed there was an earlier version, he did not produce it, nor does it change the fact that he did not describe the incident in the form admitted into evidence.

Furthermore, the medical records do not contain any reference to Mr. Miller's co-

---

[6] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

worker grabbing his arm. Mr. Miller's account is entirely uncorroborated by any of the evidence submitted. As a result, the Court finds the weight of the evidence does not support Mr. Miller's description of a co-worker grabbing his arm and exacerbating his symptoms.

With that in mind, the question remains whether it was reasonable or necessary for Mr. Miller to seek unauthorized emergent treatment on July 9, 2014. The Court finds Mr. Miller's own testimony indicated he suffered from the rash for at least several weeks, if not months. The rash was limited to his left forearm. He agreed to try hydrocortisone cream to treat the rash before his shift began. Mr. Miller admitted it was his understanding that he could have chosen to see an authorized physician chosen from TRW's panel the next day.

At the emergency room, UMC did not perform any tests regarding the rash. They discharged him from the hospital that same evening after providing pain medication and steroids and told him to follow up with his primary care physician in two to three days. Finally, Mr. Miller failed to provide any admissible evidence regarding the reasonableness and necessity of the expenses incurred at the UMC emergency room as required by law. *Buchanan,* at 656. Under these facts, the Court holds Mr. Miller failed to establish by a preponderance of the evidence the reasonableness or necessity of his unauthorized emergent treatment on July 9; thus, TRW is not obligated to pay the medical expenses associated with this treatment.

Under the circumstances, the Court holds Mr. Miller failed to prove causation as well as the reasonableness and necessity of emergent care and its resulting expense. As a result, he has shown no right to the requested relief, and the Court grants TRW's Motion for Involuntary Dismissal.

**IT IS, THEREFORE, ORDERED** as follows:

1.      Mr. Miller's claim for workers' compensation benefits is denied, and his claim is dismissed with prejudice pursuant to Rule 41.02(3) (2016) of the Tennessee Rules of Civil Procedure.

2.      This Compensation Order constitutes a final adjudication upon the merits of Mr. Miller's claim in accordance with Rule 41.02(3) (2016) of the Tennessee Rules of Civil Procedure.

3.      The $150.00 filing fee for this this cause is taxed to TRW, pursuant to Rule 0800-02-21-.07 (2015) of the Tennessee Compilation Rules and Regulations.

4.      The Employer shall prepare and file a Statistical Data Form within ten business days of the date of entry of this Order.

**ENTERED THIS THE 25th DAY of October, 2016.**

_[signature]_

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

<u>Right to Appeal:</u>

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within thirty days_ of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the

evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the party who filed the notice of appeal shall have fifteen calendar days after the issuance of the docketing notice to submit a brief to the Appeals Board for consideration. Any opposing party shall have fifteen calendar days after the filing of the appellant's brief to file a brief in response. No reply briefs shall be filed. Briefs shall comply with the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03(6) (2015).

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, this Order will become final by operation of law thirty (30) calendar days after entry, pursuant to Tennessee Code Annotated section 50-6-239(c)(7).**

## APPENDIX

Exhibits:

1. Subpoenas with certified mail receipt
2. Statement of Chris Miller;
3. Mr. Miller's responses to TRW's Written Interrogatories
4. TRW Incident Assessment Report
5. Police Report (marked for I.D. only)
6. Affidavit and certified record from University Medical Center (UMC)
7. Physician Chart from UMC
8. Medical expense forms from UMC with receipts (marked for I.D. only);

Technical Record:

1. Petition for Benefit Determination
2. Post-Discovery Dispute Certification Notice;
3. TRW's Witness and Exhibit List
4. TRW's Pre-Compensation Hearing Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Order Granting Motion for Involuntary Dismissal was sent to the following recipients by the following methods of service on this the 25th day of October, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Christopher Miller | X | | X | 318 Timothy Drive, Crossville, Tennessee 38572 Columbo76@Tamil.com |
| Lane Moore | | | X | Lane@moorerader.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

8